IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KAREN DRILL,                          )
JOSEPH X. MATESICH,                   )
                                      )
            Plaintiffs,               )
                                      )
        v.                            )        Civil Action No. 03-692
                                      )
BETHLEHEM-CENTER SCHOOL DISTRICT,     )
a political subdivision of the        )
Commonwealth of Pennsylvania;         )
HERMAN B. JACKSON, individually and)
as Superintendent of Schools,         )
Bethlehem-Center School District,     )
                                      )
            Defendants.               )

OPINION

HAY, Magistrate Judge

        Presently before this Court for disposition is a motion

for summary judgment brought by defendants Bethlehem-Center

School District ("Bethlehem") and Herman B. Jackson ("Jackson"),

Bethlehem's Superintendent.[1]

        Plaintiffs, Karen Drill ("Drill"), a member of

Bethlehem's Board of Directors, and Joseph X. Matesich

("Matesich"), a former employee at Bethlehem, commenced this

action under 42 U.S.C. § 1983 alleging that defendants had

---

[1]     In accordance with the provisions of 28 U.S.C. § 636(c) and
        Federal Rule of Civil Procedure 73, the parties consented to
        have a United States magistrate judge conduct all
        proceedings in this case, including the entry of a final
        judgment.  Doc. no. 12.

instituted a "chain of command" policy ("the Policy") pursuant to which staff members are forbidden to have direct communication with members of Bethlehem's Board of Directors (the "Board") without first seeking approval from Jackson.  Plaintiffs complained that the Policy restricts communication on matters of public concern between school district employees and elected board members thereby violating their right to free speech.  As well, Matesich alleged that he was given a five day suspension without pay, demoted from the Automated Systems Coordinator to an Automated Systems Technician and ultimately fired in retaliation for violating the Policy.

The record demonstrates that Matesich was hired by Bethlehem as its Automated Systems Coordinator in October of 2000 after several other candidates had been offered but rejected the position.[2]  Jackson was subsequently hired as Bethlehem's Superintendent after a five to four vote by the Board.[3]  Jackson testified that certain members of the Board, including Drill and Danny Symcheck ("Symcheck"), made him feel unwelcome and would monitor his activities.[4]

---

[2]     Defendant's Appendix ("Def. App.")(Matesich's Depo.), pp. 2, 3, 4.

[3]     Def. App. (Jackson Depo.), pp. 31, 36.

[4]     Def. App. (Jackson Depo.), pp. 32-34.

In July of 2001, a seminar was given by the Department of Education for school district superintendents at which Jackson received a laptop computer.[5]  Jackson testified that he believed the computer was given to him personally and, because he already had two laptops at home, decided to sell the one he received at the conference.[6]  It appears that in December of 2001, Bethlehem's security officer, Tex Calhoun ("Calhoun"), was in the office of Joseph Nepa ("Nepa"), Bethlehem's business manager and Matesich's supervisor, when Jackson came in and asked if anyone knew of anyone who may be interested in purchasing a laptop computer.[7]  Calhoun indicated that he was interested and subsequently purchased the computer from Jackson for $1100.00.[8]

At some point surrounding the transaction, Jackson, having apparently forgotten his password, was having difficulty getting into the computer and called Matesich to his office to set the computer up so that Calhoun could access it.[9]  Having thereby learned of the proposed sale and believing that the

---

[5]    Def. App. (Jackson Depo.), pp. 42-43.

[6]    Def. App. (Jackson Depo.), pp. 46-48.

[7]    Def. App. (Jackson Depo.), p. 47; Plaintiff's Appendix ("Pl. App.") (Calhoun Depo.), pp. 25-26.

[8]    Def. App. (Jackson Depo.), pp. 46-47; Pl. App. (Calhoun Depo.), pp. 27, 30-31.

[9]    Def. App. (Jackson Depo.), pp. 43-44; Pl. App. (Calhoun Depo.), pp. 28-30.

laptop at issue was the property of the school district, Matesich commenced an investigation including contacting the "Intermediate Unit," the Department of Education and Dell Corporation.[10] Matesich learned that the laptops were purchased with grant money for use by the school districts, that they were the property of the school district and that the serial number on the computer Jackson sold to Calhoun matched the number on the laptop Jackson received at the seminar.[11]

It appears undisputed that Matesich never approached Jackson or anyone else in the administration about his concerns over the sale, stating that he wanted to get all the information first, but did tell Drill and Symcheck, two Board members who were opposed to Jackson.[12]  Matesich also approached Nepa and suggested that Bethlehem should have a policy regarding equipment that was acquired at seminars.[13]  When asked by Nepa whether his suggested policy concerned Jackson's laptop, Matesich stated that

---

[10]    Def. App. (Matesich Depo.), pp. 7-9; Def. App. (E-mail from Department of Education to Matesich), p. 97; Pl. App. (Calhoun Depo.), p. 31.

[11]    Def. App. (Matesich Depo.), pp. 7-9; Def. App. (E-mail from Department of Education to Matesich), p. 97.

[12]    Def. App. (Matesich Depo.), pp. 9-17.  See Defendants' Concise Statement of Material Facts, ¶ 16; Plaintiffs' Response to Defendants' Concise Statement of Material facts, ¶ 16.  See also W.D. Pa. L.R. 56.1E.

[13]    Def. App. (Matesich Depo.), pp. 10-11.

he "avoided the issue."[14]  It nevertheless appears that rumors began circulating that Jackson had stolen the computer and sold it.  Consequently, according to Jackson, despite having been told by Bethlehem's solicitor, Dennis Makel ("Makel"), that there was nothing wrong with his having sold the computer since it was given to him, Jackson returned the money to Calhoun and retrieved the computer.[15]  It also appears that Jackson spoke to Matesich about the rumors at which time, according to Jackson, Matesich "blew him off."[16]  Matesich, on the other hand, testified that Jackson badgered him with questions and berated him about his attitude and not being a team player.  Matesich also testified that he nevertheless began questioning Jackson about whether he had a laptop that belonged to the district and whether he had been to a seminar where he received a Dell laptop, at which time Jackson told him it was none of his business and, when Matesich began to ask yet another question, began shouting that he was the superintendent and told Matesich he was going to sue him.[17]

Further, it appears that, at Makel's suggestion, Jackson wrote a letter to Matesich asking him to respond to

---

[14]   Id. at p. 11.

[15]   Def. App. (Jackson Depo.), pp. 53-56, 59-60, 68.

[16]   Def. App. (Jackson Depo.), p. 52, 55, 58.

[17]   Pl. App. (Matesich Sworn Statement), pp. 6-9; Pl. App. (Matesich Depo.), pp. 18-19.

certain questions concerning the rumors that had been spreading and the proposed policy he suggested to Nepa.[18]  According to Jackson, Matesich did not provide an appropriate reply.[19]

It also appears undisputed that after learning from Matesich that Jackson had sold the computer, Drill contacted the Ethics Commission which, in turn, interviewed Matesich during the course of its investigation.[20]  The Ethics Commission issued its adjudication on April 18, 2003, concluding that Jackson had committed an unintentional violation of the Ethics Act and noting that Jackson agreed to pay a $500 fine to settle the matter.[21]

Sometime in early 2003, prior to the Ethic's Commission's adjudication, discussions took place regarding the need to upgrade and/or develop Bethlehem's technology program which appears to have been beyond Matesich's knowledge or capabilities.[22]  Jackson testified that he had consequently recommended to the Board that Richard DeMarco ("DeMarco"), a friend of Nepas's who had experience in the field, be given the

---

[18]    Def. App. (Jackson Depo.), pp. 50, 52, 53, 55-56, 60; Def. App. (January 3, 2002 Letter), p. 98; Pl. App. (Matesich Sworn Statement), p. 7.

[19]    Def. App. (Jackson Depo.), p. 60.

[20]    Def. App. (Matesich Depo.), p. 18.

[21]    Def. App. (Adjudication of State Ethics Commission), pp. 101-112; Pl. App. (same), pp. 36-47.

[22]    Def. App. (Jackson Depo.), p. 75.  See Defendants' Concise Statement of Material Facts, ¶ 34; Plaintiffs' Response to Defendants' Concise Statement of Material Facts, ¶ 34.

job and that DeMarco was, in fact, hired as a consultant.[23]
DeMarco subsequently developed a plan, one which Matesich
concedes he did not agree with, which he presented to the Board
and technology committee on March 19, 2003.[24]  While DeMarco was
presenting his proposal, a representative of Star Tech Company,
DeMarco's competitor, appeared to offer a counter proposal having
been told by Matesich that it was okay to do so.[25]  Matesich had
apparently invited the Star Tech representative to attend the
meeting without authorization or knowledge by either Jackson or
Nepa which was in direct contravention to a directive issued to
Matesich on numerous occasions that he was to provide him and
Nepa with any information before it was brought to the Board's
attention.[26]  Matesich testified that he believed it was an open
meeting for quotes and that if DeMarco was giving a quote he
could have another quote there too.[27]  Matesich also testified,
however, that he had already given Nepa quotes from Star Tech and

---

[23]    Def. App. (Jackson Depo.), p. 75.

[24]    Id. at p. 76; Def. App. (Matesich Depo.), pp. 20-21.  See
Defendants' Concise Statement of Material Facts, ¶ 35;
Plaintiffs' Response to Defendants' Concise Statement of
Material Facts, ¶ 35.

[25]    Def. App. (Jackson Depo.), p. 76; Def. App. (Matesich
Depo.), p. 23.

[26]    Def. App. (Jackson Depo.), pp. 76-77.  See Defendants'
Concise Statement of Material Facts, ¶ 36; Plaintiffs'
Response to Defendants' Concise Statement of Material Facts,
¶ 36.

[27]    Def. App. (Matesich's Depo.), pp. 24-25.

another company named Computer Centerline, and that Nepa had
rejected them as being too high.[28]  It was also Matesich's
testimony that usually his role was just to get the proposals and
give them to Nepa to use.[29]

Nevertheless, as a result of the incident, Jackson
issued a letter to Matesich on March 20, 2003, advising him that
he had recommended to the Board that, effective March 21, 2003,
Matesich be suspended for five days without pay, be transferred
to another position and be placed on six months probation.[30]  In
another letter dated March 25, 2003, Jackson informed Matesich
that the Board had voted the previous day to transfer him to the
position of Technology Technician at the same rate of
compensation and to place him on six months probation.[31]

Plaintiffs filed a complaint commencing this lawsuit on
May 15, 2003, wherein they brought claims against both defendants
for violating their civil rights under the First and Fourteenth
Amendments to the United States Constitution (Count I); for
violating Matesich's civil rights by demoting him and by denying

---

[28]    Id. at pp. 21-25.  See Defendants' Concise Statement of
Material Facts, ¶ 38; Plaintiffs' Response to Defendants'
Concise Statement of Material Facts, ¶ 38.

[29]    Id. at p. 24.

[30]    Def. App. (March 20, 2003 Letter), p. 99; Pl. App. (Matesich
Depo.), p. 21.

[31]    Def. App. (March 25, 2003 Letter), p. 100; Pl. App.
(Matesich Depo.), pp. 21-22.

him a job performance evaluation and bonus (Count II); for violating Matesich's right to due process under the Fifth and Fourteenth Amendments by subjecting him to an adverse job action without notice or an opportunity to be heard (Count III); and for violating Matesich's civil rights under the First, Fifth and Fourteenth Amendments by retaliating against him when he attempted to keep the line of communication with board members open (Count IV). Matesich also brought state law claims for breach of contract against Bethlehem (Count V); negligent and intentional infliction of emotional distress against both defendants (Count VI); and a claim for punitive damages against Jackson (Count VII).

Defendants thereafter filed a motion to dismiss pursuant to which this Court dismissed all of plaintiffs' claims except those brought at Count IV, to the extent Matesich alleged that he was retaliated against in violation of his First and Fourteenth Amendment rights, and Matesich's claim for punitive damages against Jackson brought at Count VII.[32]

In the interim, in October of 2003, it appears that Jackson began experiencing some problems with his desktop computer and Matesich was contacted to fix them.[33] Matesich

---

[32]    See Docket Nos. 13, 14.

[33]    Def. App. (Matesich Depo.), p. 26; Def. App. (Jackson Depo.), p. 78.

9

apparently last worked on the computer on October 23rd and, according to Jackson, when he returned to his office afterward all of the information he had stored on the computer and his palm pilot, including dates he had entered on his calendar, had been wiped out.  Jackson testified that when he asked Matesich why the information had been removed and not restored, Matesich explained that when Microsoft 2000 Pro is reinstalled it destroys all of the existing data on the computer.  When pressed as to why he had not saved or stored the information somewhere else if he knew it would be destroyed, Matesich sated, "You tell me what I was supposed to do."[34]

       Matesich, on the other hand, testified that Jackson's programs were still on his computer but, rather than showing up on his desktop as a shortcut icon as they had been before, it was necessary to hit the start icon to pull up the menu of available programs which Jackson apparently did not know how to do. Matesich also testified that he didn't realize this was the nature of the problem at the time but yet told Jackson that the programs were still there.  When asked whether he showed Jackson how to get them back he responded that, "He didn't ask me to," "Like he had been using his computer for three years, at least," and "I'm to the point that I'm so far advanced that I don't think

---

[34]    Def. App. (Jackson Depo.), pp. 79-81.

of those little things anymore."[35]  Later, however, Matesich
testified that a special program was needed to restore
everything.[36]

　　　　As a result, Jackson wrote a memorandum to the Board
dated October 31, 2003, in which he relayed the incident and
indicated that 2½ years of files were no longer retrievable from
his computer.  He also indicated that he asked Matesich in the
presence of Board President Denise Duvall whether he knew that
all of the data would be destroyed when he reinstalled Microsoft
2000 Pro and did it anyway, to which Matesich responded, "Yes,
what else was I supposed to do?"[37]  Jackson also recommended that
Matesich be terminated which the Board voted to do on December
16, 2003.[38]

　　　　Thereafter Matesich filed a request for unemployment
benefits which Bethlehem challenged on the basis that he had
engaged in willful misconduct.  A hearing was held before an
unemployment compensation referee on March 22, 2004, following
which the referee found that Matesich had admitted that he knew
the files would be lost and reinstalled the program anyway, that

---

[35]　　　Def. App. (Matesich Depo.), pp.26-28.

[36]　　　Pl. App. (Matesich Depo.), p. 23.

[37]　　　Def. App. (October 31, 2003 Memo), p. 113.

[38]　　　Id. at p. 114.

he was uncooperative in restoring the files and did not do so or offer to do so at any time prior to his termination even though he had the requested files in his possession and was capable of restoring them to Jackson's computer.  The referee also found that Matesich had secured and removed a copy of the files from the premises and retained them after he was terminated and concluded that Matesich had engaged in willful misconduct and was ineligible for unemployment benefits.[39]  Matesich appealed the referee's determination to the Unemployment Compensation Review Board which affirmed the decision.[40]  No further appeals were taken.

Matesich, however, sought and was granted leave to file an amended complaint in this case so as to add claims arising out of the termination of his employment.[41]  An amended complaint was filed on May 5, 2004, wherein plaintiffs reasserted their First Amendment claim brought at Count I of the original complaint (Count I), brought a claim alleging that Matesich's termination violated the Pennsylvania Whistleblower Law ("PWL"), 43 P.S. § 1421, et seq. (Count II); reasserted Matesich's retaliation claim brought under the First and Fourteenth Amendments (Count III);

---

[39]   Id. at pp. 115-116.

[40]   Def. App. (Board of Review Decision), p. 118.

[41]   See Docket Nos. 17, 20.

claimed that Matesich's termination violates the Pennsylvania
Public Official and Employee Ethics Act ("Ethics Act"), 65 Pa.
C.S.A. §§ 1101, et seq. (Count IV); asserted a new retaliation
claim under the First Amendment based on Matesich's termination
(Count V); and again requested punitive damages from Jackson
(Count VI).

Defendants subsequently filed a second motion to
dismiss in which they sought to have Counts I and IV of the
amended complaint dismissed arguing that Count I was merely a
reiteration of Count I brought in the original complaint which
had been dismissed by the Court and that there was no private
right of action under the Ethics Act.  The Court granted
defendants' motion leaving only Matesich's claims brought under
the PWL and his claims for retaliation.

Defendants have now filed a motion for summary judgment
arguing that there is insufficient evidence of record to sustain
Matesich's remaining claims and that they are entitled to
judgment as a matter of law.

Summary judgment is appropriate if, drawing all
inferences in favor of the non-moving party, "the pleadings,
depositions, answers to interrogatories and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party

13

is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). Summary judgment may be granted against a party who fails
to adduce facts sufficient to establish the existence of any
element essential to that party's case, and for which that party
will bear the burden of proof at trial. Celotex Corp. v.
Catrett, 477 U.S. 317 (1986). The moving party bears the initial
burden of identifying evidence which demonstrates the absence of
a genuine issue of material fact. Once that burden has been met,
the non-moving party must set forth "specific facts showing that
there is a *genuine issue for trial* ... or the factual record will
be taken as presented by the moving party and judgment will be
entered as a matter of law. Matsushita Electric Industrial Corp.
v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine
only if the evidence is such that a reasonable jury could return
a verdict for the non-moving party. Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether
the evidence presents a sufficient disagreement to require
submission to a jury or whether it is so one-sided that one party
must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d
1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991),
quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

Defendants initially contend that the evidence of
record is insufficient to permit Matesich to succeed on his claim
brought pursuant to the PWL at Count II of the amended complaint.

It appears undisputed that under the PWL:

> No employer may discharge, threaten or
> otherwise discriminate or retaliate against
> an employee regarding the employee's
> compensation, terms, conditions, location or
> privileges of employment because the employee
> or a person acting on behalf of the employee
> makes a good faith report or is about to
> report, verbally or in writing, to the
> employer or appropriate authority an instance
> of wrongdoing or waste.

43 P.S. § 1423(a).[42]  Thus, to succeed on a claim under the PWL,
an employee must demonstrate that, prior to being discharged, he
or she made a good faith report of waste or wrongdoing to his or
her employer or an appropriate authority and was discharged in
reprisal for making the report.  Lutz v. Springettsbury Township,
667 A.2d 251, 253 (Pa. Commw. Ct. 1995).  A "good faith report"
is one "which is made without malice or consideration of personal
benefit and which the person making the report has reasonable
cause to believe is true."  43 P.S. § 1422.  As well, the PWL
defines an "appropriate authority" as either a federal, state or

---

[42]    Although Matesich also recites the language of 43 P.S. §
1423(b), which prohibits retaliation against an employee who
is requested by an appropriate authority to participate in
an investigation, subsection (b) does not apply here.  Not
only has Matesich failed to present any argument in this
regard but he has only alleged a violation of subsection (a)
in the amended complaint.  See Amended Complaint, ¶¶ 49, 50
(Docket No. 23).

local government body, or an agent thereof, having jurisdiction over, *inter alia*, professional conduct, ethics or waste.  <u>Id.</u>  An "employer" is defined as a person supervising one or more employee including the employee in question or an agent of a public body.  <u>Id.</u>

Defendants argue that Matesich did not make a good faith report as the evidence demonstrates that he never made a report to his employer, the Ethics Commission or any other appropriate authority and that to the extent his informing Drill and Symcheck of his suspicions is considered a "report" it was not made in good faith.  As well, defendants argue that the evidence of record does not support a finding that Matesich was terminated in reprisal for making reports to Drill and Symcheck as almost two years had passed in the interim.

Matesich has not specifically addressed either of defendants' arguments in this regard but merely states, without any discussion of the evidence, that he has raised genuine issues of material fact regarding good faith reports of waste and, citing to a number of cases where summary judgment was denied on claims brought under the PWL, but without discussion of the facts or issues presented in those cases, simply concludes that summary judgment is inappropriate here.  We disagree.

16

First, it appears undisputed that Matesich did not report an ethics violation, or any other violation, to the Ethics Commission. Rather, it was Matesich's testimony that he had never heard of an ethics violation at the time, that it was Drill who contacted the Ethics Commission and that it was the Ethics Commission that, in turn, contacted him.[43]

Further, the evidence demonstrates that the only people that Matesich did report his suspicions that Jackson had sold a laptop belonging to the school district to was Drill, Symcheck and Tex Calhoun, none of whom appear to be Matesich's employer or an appropriate authority.[44] Indeed, it appears that Calhoun is the school's security officer and is neither Matesich's supervisor nor an agent of the school district. Similarly, Drill and Symcheck are merely individual members of the Board and, as such, are unable to act alone for the Board or Bethlehem thereby precluding a finding that they are "agents" of either entity. See Bangor Area Education Association v. Angle, 720 A.2d 198, 201

---

[43]   Def. App. (Matesich Depo.), p. 18.

[44]   Although Matesich has stated that he also informed his supervisor, Nepa, about Jackson's sale of the computer, the record reflects only that he mentioned to Nepa that Bethlehem should have a policy concerning equipment acquired at seminars using a printer as an example. Def. App. (Matesich Depo.), p. 10. Further, when Nepa asked him whether this was about the laptop, Matesich testified that he "avoided the issue," stating that he wanted to get all the information first. Id. at 11. Thus, the record does not support Matesich's contention that he reported Jackson's sale of the computer to his supervisor.

(Pa. Commw. Ct. 1998), affirmed, 561 Pa. 305, 750 A.2d 282
(1999)(per curiam)("The [Public School] Code confers no authority
upon *individual* school board members to act unilaterally under
the guise of carrying out the responsibility of the board as a
*whole*.  The law is clear that actions of by a school board are
taken by collective authority.")(emphasis in original).  See also
Black's Law Dictionary 63 (6th ed. 1990)(Defining "agent" as "a
person authorized by another to act for or in place of him ....")
Thus, Matesich did not report his concerns to either his employer
or an appropriate authority as required under the statute.

        Nor has Matesich pointed to any evidence of record from
which a jury could conclude that he was terminated as a result of
his having reported his suspicions about Jackson to Drill and
Symcheck.

        Under Pennsylvania law,

        An employee who has been terminated based on
        a filed report and wants to base his or her
        complaint on their employer's violation under
        the Whistleblower Law must specify how their
        employer is guilty of waste and/or
        wrongdoing.  They must also show by concrete
        facts or surrounding circumstances that the
        report led to their dismissal, such as that
        there was specific direction or information
        they received not to file the report or there
        would be adverse consequences because the
        report was filed.

Gray v. Hafer, 168 Pa. Commw. 613, 620, 651 A.2d 221, 225 (1994),
affirmed, 642 Pa. 607, 669 A.2d 335 (1995)(per curiam).

                              18

Here, Matesich has not only failed to point to any such concrete facts but, as previously mentioned, has failed to address the issue at all.  The mere fact that he made a report and was subsequently terminated, however, is not sufficient.  Id. See Lutz v. Springettsbury Township, 667 A.2d at 253.  Moreover, the record demonstrates that Matesich divulged his suspicions to Drill and Symcheck at the latest in January of 2002, but was not terminated until December of 2003, almost two years later. Absent any facts showing that the two events were related, the lapse of two years is simply too attenuated to create an issue of material fact.  See Golaschevsky v. Pennsylvania Department of Environmental Resources, 683 A.2d 1299, 1304 (Pa. Commw. Ct. 1996), affirmed, 554 Pa. 157, 720 A.2d 757 (1998)(Declining to find a causal connection even though only four months had passed between the report and the plaintiff's termination).  As such, defendants are entitled to summary judgment on Matesich's claims brought under the PWL.[45]

Defendants also contend that Matesich's retaliation claim brought at Count III of the amended complaint is subject to

---

[45]    Having found that Matesich is unable to succeed on his claim brought under the PWL because there is no evidence of record from which a fact finder could conclude that Matesich made a report to his employer or an appropriate authority or that there is a causal connection between his report to Drill and Symcheck and his termination, we need not, and have not, addressed whether the report was made in good faith or whether the wrongdoing reported is encompassed by the PWL.

summary judgment as Matesich is unable to point to evidence that his purported violation of the Policy or his interview with the Ethics Commission was a substantial or motivating factor in the Board's decision to suspend and transfer him in March of 2003.[46]

A public employee's claim of retaliation for engaging in protected activity is properly assessed under a three-prong analysis.  Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir.), cert. denied, 522 U.S. 816 (1997).  The first two prongs are satisfied where the plaintiff can demonstrate that the activity in question is protected and that the protected activity was a substantial reason for the retaliatory action.  If, however, the defendants are able to establish that they would have taken the same action even if the protected activity had not taken place then the third step of the analysis has been satisfied and plaintiff's claims must fail.  Id.

Instantly, defendants argue that the second prong cannot be met in this case and that the evidence of record nevertheless establishes that Matesich would have been suspended

---

[46]   As previously discussed, the retaliation claim brought at Count III of the amended complaint is a reiteration of the retaliation claim brought by Matesich in the original complaint filed on May 15, 2003.  Because the original complaint was filed prior to his termination, this claim necessarily pertains to his suspension and transfer in March of 2003.  In contrast, Matesich has alleged in the retaliation claim brought at Count V of the amended complaint that he was terminated in December of 2003 in retaliation for his having filed this law suit.

even if he had not engaged in the protected activity.  Defendants specifically argue that Matesich's reports to Drill and Symcheck regarding Jackson's sale of the computer and the concomitant Ethics Commission investigation were not a motivating factor in the decision to suspend and transfer him as evidenced by, amongst other things, the fact that Matesich contacted Drill and Symcheck in January and was interviewed by the Ethics Commission in March of 2002, yet Matesich was not suspended and transferred until March of 2003, a year later.

The Court of Appeals for the Third Circuit has held that "the mere fact that an adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997).  Moreover, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred."  Krouse v. American Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997), quoting Robinson, 120 F.3d at 1302.  E.g., Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), cert. denied, 493 U.S. 1023 (1990) (Finding that causal connection was established were only two days elapsed between the protected activity and plaintiff's discharge.)

Here, it is undisputed that Matesich reported that Jackson had sold a computer belonging to the school district to Drill and Symcheck in January of 2002 and that he was subsequently interviewed by the Ethics Commission in March of 2002.  It is also undisputed that Matesich was not suspended and transferred until March of 2003.  Thus, one year passed between the protected activity and the adverse employment action at issue, which, in this Court's view, is not unusually suggestive of a retaliatory motive and precludes a finding that a causal connection between the two events may be inferred.  See Weston v. Pennsylvania, 251 F.3d 420, 431-32 (3d Cir. 2001) (Finding that causation could not be inferred where the suspensions which the plaintiff received "were more than a year distant from his protected activities.")

Further, while the Court is cognizant of the fact that "[w]hen temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus," Krouse v. American Sterilizer Co., 126 F.3d at 503-04, Matesich does not provide the necessary link.  Indeed, other than to reiterate the elements of a retaliation claim and repeat his allegations that he was suspended and transferred because he engaged in protected activity, he does little to counter

defendants' argument that there is no evidence to establish a causal connection between the two events.[47]  The only evidence to which Matesich points is a series of meetings he had with Jackson on January 2nd, January 3rd, January 4th, and January 16th, 2002, at which the sale of the laptop was discussed and Jackson, according to Matesich, was confrontational and threatening.  The difficulty with Matesich's evidence, however, is that the last of these conversations occurred in January of 2002, which was still over a year before he was suspended and transferred and, thus, does not fill the gap or provide evidence of retaliatory animus during the intervening period.

Moreover, Matesich has failed to address at all defendants' argument that the adverse actions would have been taken even if his violation of the Policy and report to the Ethics Commission had not occurred.  Defendants have argued, and Matesich does not dispute, that he did not favor hiring DeMarco or agree with his proposal and that, after DeMarco had been hired

---

[47]   Moreover, although Matesich has cited several cases -- mostly unpublished -- in which claims for retaliation were at issue, he has failed to discuss how they are otherwise relevant to the instant dispute or why summary judgment should be denied here simply because it was denied in those cases.  Indeed, the first two cases have been cited for propositions that are not even at issue here, i.e., what constitutes an adverse employment action and whether the speech at issue involves a matter of public concern.  See Miles v. City of Philadelphia, 2001 U.S. Dist. LEXIS 4736 *18-21 (E.D. Pa. 2001); VanTassel v. Brooks, 355 F. Supp. 2d 788, 798 (W.D. Pa. 2005).  See Plaintiff's Response to Defendants' Motion for Summary Judgment, pp. 28-30.

by the Board to upgrade Bethlehem's computer system and was presenting his proposal at a meeting, a representative from a competitor appeared to present a counter proposal having been told by Matesich, without anyone's authorization and in an effort to disrupt the meeting, that it was okay to do so.[48]  Although Matesich testified that he thought he should be able to have another company present a quote at the meeting, he also testified that it was his role merely to get the proposals and give them to Nepa and concedes that Nepa had already rejected Star Tech's proposal as being too high.[49]

Moreover, defendants have stated in their Concise Statement of Material Facts that it was because of this incident that Jackson recommended that Matesich be transferred and placed on probation which the Board voted to do.[50]  Rather than dispute defendants' assertion or point to evidence that would create an issue of fact, Matesich merely states that "[a]fter reasonable investigation, plaintiffs are without information sufficient to

---

[48]    Def. App. (Jackson Depo.), pp. 75-76; Def. App. (Matesich Depo.), pp. 23-25.  See Defendants' Concise Statement of Material Facts, ¶¶ 35, 36, 39; Plaintiffs' Response to Defendants' Concise Statement of Material Facts, ¶¶ 35, 36, 39.

[49]    Def. App. (Matesich Depo.), pp. 21-25.  See Defendants' Concise Statement of Material Facts, ¶ 38; Plaintiffs' Response to Defendants' Concise Statement of Material Facts, ¶ 38.

[50]    Defendants' Concise Statement of Material Facts, ¶¶ 40, 41.

form a belief as to the truth of the allegations . . . ."[51]
Under these circumstances, it appears that Matesich is without
sufficient evidence to create an issue of fact for trial and
defendants are therefore entitled to summary judgment on
Matesich's retaliation claim brought at Count III of the amended
complaint.

Defendants have lastly argued that they are entitled to
summary judgment on Matesich's retaliation claim brought at Count
V of the amended complaint in which Matesich claims he was
terminated in December of 2003 in retaliation for filing the
instant suit.  Specifically, defendants contend that summary
judgment is warranted because over six months passed between the
protected activity and the adverse employment activity, thereby
precluding the inference of a retaliatory motive, and that
Matesich has failed to adduce evidence of a retaliatory animus in
the intervening months.  Defendants also argue that the evidence
of record shows that Matesich would have been terminated even if
he hadn't filed the instant lawsuit and that Matesich is
nevertheless estopped from challenging his termination as the
issue was already fairly litigated at the unemployment
compensation hearing initiated by Matesich.

---

[51]    Plaintiffs' Response to Defendants' Concise Statement of
Material Facts, ¶¶ 40, 41.

Matesich, much as before, has seemingly conceded that summary judgment is appropriate as, other than the collateral estoppel issue, he has failed to address any of the arguments raised by defendants in their brief.  Instead, Matesich merely summarizes the basis of his complaint, i.e., that the "chain of command" policy restricted communication on matters of public concern which violated his First and Fourteenth Amendment rights and that he was improperly disciplined and terminated and then concludes that the "school district's interest in penalizing plaintiff Matesich for commencing his civil rights action constituted a major motivating factor and played a prominent role in its decision to terminate his employment."[52]  Matesich then states that defendants' termination of his employment "gives rise to an independent, retaliation based cause of action under Section 1983 and the First Amendment...."[53]

Matesich's response not only ignores defendants' motion but appears, as before, to misperceive the import of summary judgment.  It is not sufficient at this stage of the proceedings that the facts as alleged in the complaint "give rise" to a cause of action.  Rather, it is incumbent upon plaintiff at the summary judgment stage to point to evidence of record that, if presented

---

[52]    Plaintiff's Response to Defendants' Motion for Summary Judgement, pp. 33-34.

[53]    Id. at p. 34.

26

to and found credible by a jury, would permit a verdict in his favor.  This Matesich has failed to do.

It nevertheless appears undisputed that the initial complaint in this matter was filed on May 15, 2003, and that Matesich was suspended in November and ultimately terminated on December 16, 2003, seven months later.  The passage of even six months, however, is insufficient standing alone to establish a causal connection between the protected activity and the alleged retaliation.  See Williams v. Philadelphia Housing Authority Police Department, 380 F.3d 751, 760 (3d Cir. 2004), cert. denied, 544 U.S. 961 (2005)(Finding that the just over two months between the protected activity and plaintiff's termination was not so close as to be unduly suggestive of retaliation.); Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (Finding that the three weeks between the date of plaintiff's complaint and the termination letter was not so close as to be unduly suggestive.)

While, as previously discussed, courts may look to other evidence of a retaliatory animus during the intervening period when temporal proximity between the protected activity and the alleged retaliatory action is lacking, Matesich has not pointed to any such evidence nor is the Court able to cull any

from the record.[54]   See Krouse v. American Sterilizer Co., 126
F.3d at 503-04.  As such, the record does not support a finding
that retaliation was a substantial or motivating factor in
Bethlehem's decision to terminate Matesich's employment.

Moreover, defendants have argued that Matesich was
terminated because of the loss of information and other problems
arising after he attempted to fix Jackson's computer in October
of 2003 and, thus, would have been terminated regardless of
whether he filed the instant suit.[55]  Matesich has not only
failed to address defendants' argument in this regard but has
again seemingly conceded that there is no evidence of record to
counter defendants' assertions or create a genuine issue of fact.
Indeed, defendants stated in their Concise Statement of Material
Facts that Jackson recommended and the Board voted to terminate
Matesich as a result of the computer repair incident.[56]
Matesich's has again responded stating only that "[a]fter

---

[54]   Although Matesich has referenced in paragraph 113 of his
Concise Statement of Material Facts that he furnished
information to the Pennsylvania State Auditor General's
Office in October of 2003 regarding Jackson's alleged abuse
of sick leave, he has failed to provide any evidentiary
support from which a fact finder could conclude that
Matesich, in fact, furnished the information or that
Jackson, or anyone else from Bethlehem was aware of it.  The
fact that Matesich has alleged that he furnished such
information in his complaints, which is the only "support"
he cites, is, at this juncture, wholly insufficient.

[55]   See Def. App. (Jackson's Depo.), pp. 78-81.

[56]   Defendants' Concise Statement of Material Facts, ¶¶ 49-51.

28

reasonable investigation, plaintiffs are without information

sufficient to form a belief as to the truth of the allegations .

. . ."[57]  If, at this juncture, plaintiffs are without sufficient

information to refute defendants' assertions in this regard, it

follows that they do not have sufficient information to present

to a jury.  Defendants are therefore entitled to summary

judgment.[58]

        Finally, we note that in his response to defendants'

motion for summary judgment Matesich has curiously addressed a

wrongful termination claim that was not only not the subject of

defendants' motion but was never alleged by plaintiffs in the

first instance.  Equally baffling, in response to defendants'

reply, in which defendants point out that a wrongful discharge

claim has never been alleged and is not before the Court,

Matesich, rather than point to the amended complaint where one

might expect to find what causes of action have been alleged,

argues that plaintiffs fully briefed the wrongful discharge claim

in their brief in opposition to defendants' motion to dismiss the

---

[57]     Plaintiffs' Response to Defendants Concise Statement of
        Material Facts, ¶¶ 49-51.

[58]     Having already found that Matesich is unable to succeed on
        his retaliation claim brought at Count V of the amended
        complaint we need not address whether or not he is estopped
        from challenging his termination because the issue was
        decided unfavorably to him at the unemployment compensation
        proceedings.

amended complaint.[59]  Notwithstanding that a complaint may not be amended by a brief filed in opposition to an motion to dismiss, <u>Pennsylvania v. PepsiCo, Inc.</u>, 836 F.2d 173, 181 (3d Cir. 1988), the portion of the brief to which Matesich cites discusses his claim brought under the Ethics Act which defendants had argued should be dismissed because no private right of action exists under that statute.[60]  While Matesich did indeed cite to cases in his responsive brief where claims for wrongful discharge had been brought, the Court noted then and reiterates now that, "Plaintiff, however, has not brought a wrongful discharge claim nor has he asserted in the amended complaint that his termination violated a public policy."[61]  Thus, the Court need not address Matesich's argument that his claim for wrongful discharge survives summary judgment.

---

[59]   Plaintiffs' Sur-Reply to Defendants' Motion for Summary Judgment, pp. 1-2.

[60]   <u>See</u> Plaintiffs' Brief in Opposition to Motion to Dismiss Amended Complaint, pp. 4-5 (Docket No. 34).

[61]   Opinion, Hay, M.J., p. 10 (Docket No. 36).

For these reasons, defendants' motion for summary judgment (Docket No. 52) is GRANTED.

By the Court,

/s/    Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated: 28 April, 2006

cc:  Louis C. Long, Esquire
     Meyer, Darragh, Buckler, Bebenek & Eck
     U.S. Steel Tower, Suite 4850
     600 Grant Street
     Pittsburgh, PA 15219

     Witold J. Walczak, Esquire
     ACLF of PA
     313 Atwood Street
     Pittsburgh, PA 15213

     Anthony G. Sanchez, Esquire
     Todd P. Prugar, Esquire
     Andrews & Price
     1500 Ardmore Boulevard
     Suite 506
     Pittsburgh, PA 15221